UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____X

**Civil Case No.**
1:23 CV -10549(KPF)

**Amended Complaint**

Franklin Hichez Baldemora

      Plaintiff**,**

   -   against –

City of New York, New York City Police Department,
P.O.  Argueta Linares Manuel, Badge, No. 22066,
Tax Registration No. 964891, In His Individual Capacity,
P.O. Eldon Hadzovic, Shield No. 25146, In His Individual Capacity,
P.O. Jehad Mahmud, Shield No. 22821, In His Individual Capacity,
P. O, Husamedin Umer, Shield No.7309, In His Individual Capacity,
P.O. Sgt. Hosward Veloz, Shield No. 3784, In His Individual Capacity,
P. O. Alex Durst, Shield NO. 22380, In His Individual Capacity,
P. O. Zoupeng, Zheng, Shield No. 25461, In His Individual Capacity,
And P.O. Megan L. Walsh, Shield No. 27105, In Her Individual Capacity,

      Defendants,

_____X

     Plaintiff, Franklin Hichez Baldemora by his attorney, Welton K. Wisham of The Law office of Welton K. Wisham, alleges upon information, and belief, the following against Defendants, The City of New York, the New York City Police Department and police officers Argueta Linares Manuel, P.O. Eldon Hadzovic, Shield No. 25146, P.O. Jehad Mahmud, Shield No. 22821, P. O, Husamedin Umer, Shield No.7309, P.O. Sgt. Hosward Veloz, Shield No. 3784, P.O. Alex Durst, P. O. Zoupeng, Zheng, and P.O. Megan L. Walsh, that upon information and belief, that;

## **PRELIMINARY STATEMENT**

1.   This action arises out of the Defendants' unreasonable, outrageous and excessive use of force inflicted upon Plaintiff, Franklin Hichez Baldemora by the individual police officers during the course of Plaintiff's unlawful detention, seizure, and arrest, on August 25, 2023, the officers

pulled Plaintiff off his motor scooter and jumped on his back causing his left knee to buckle which resulted in a tibial plateau fracture to Plaintiff's left knee – a severe injury that required surgical intervention and multiple implants.

2.    The Defendant knowingly and willfully violated Mr. Baldemora's clearly established constitutional rights by inflicting force which was unreasonable during the course of Plaintiff's arrest without probable cause Plaintiff was walking his motor scooter away from unknown individuals who jumped out of unmarked vehicles and attacked Mr. Baldemora and threw him to the ground causing significant injury to Plaintiff's knee. Plaintiff posed no threat to the officers involved in the underlying incident.

3.    The officers unreasonably seized Mr. Baldemora and threw the Plaintiff off his motor bike onto the ground whereby six officers jumped on top of the Plaintiff and proceeded to placed their knees into Plaintiff's back as Mr. Baldemora was laying helplessly on the ground.

4.    The force used by the police officers was objectively unreasonable and caused severe physical and emotional injuries to the Plaintiff.

5.    Mr. Baldemora was unable to walk after the officer's attack and sought immediate medical attention.

6.    Mr. Baldemora was arrested and held without probable cause at the 42nd precinct. All charges against the Plaintiff were subsequently dismissed prior to arraignment due to the Defendant's failure to draft and file an accusatory instrument with the Bronx District Attorney's Office as required under New York State law.

7.    Mr. Baldemora suffered and continues to suffer extreme pain in his knee and underwent surgery on his knee due to the officer's wanton use of force.

8.   Plaintiff now seeks adequate compensation pursuant to 42 U.S.C Section 1983, and New York State Law, Article 1, Section 12 against the individual Defendants for False Arrest, False Imprisonment, Excessive Force and for the willful and deliberate indifference to Plaintiff's Constitutional rights which were clearly established under the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C Section 1983.

## **JURISDICTION**

9.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sections 1331, 1343, and 28 U.S.C. Section 1367, and under 42 U.S.C Section 1983, and 42 U.S.C. Section 1988.

10.   This action arises under the Fourth and Fourteenth Amendments to the Constitution of the United States and pursuant to New York State Law.

## **VENUE**

11.   Under 28 U.S.C. Sec. 1391(b), venue is proper in the Southern District of New York because the Defendants are located in this District and are residents of the State of New York.

12.   Venue is proper in the Southern District of New York because the acts alleged throughout this Complaint occurred in this Judicial District.   28 U.S.C. Section 1391(b), 1391(e)and 1402(b).

## **PARTIES**

13.   At all times hereinafter mentioned throughout this Complaint, Plaintiff Franklin Hichez Baldemora is a citizen of the United States of America and resident of the Bronx, New York.

14.   Defendants, Police Officers Argueta Linares Manuel, P.O. Eldon Hadzovic, P.O. Jehad Mahmud, P. O, Husamedin Umer, P.O. Sgt. Hosward Veloz, P. O. Alex Durst, P. O. Zoupeng Zheng, a P.O. Megan L. Walsh, were at all times relevant herein, duly appointed police officers

employed by the New York City Police Department. See (Plaintiff's **Exhibit No.1 Photos of officers)**

15.   The Defendant police officers are believed to be currently assigned to Public Service Ara 7 Police precinct located at 737 Melrose Ave, Bronx, New York. Police officer Megan Walsh is believed to be assigned to Police Service Area 6, located at 2770 Fredrick Douglass Blvd, New York City, NY 10039.

16.   Officers P.O. Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng Zheng, and P.O. Megan L. Walsh, were at all times herein acted within the scope of their employment and under color of law on the date of Plaintiff's arrest.

17.   The City of New York is a municipal corporation within the State of New York

18.   Pursuant to Section 431 of its Charter, the City of New York has established and maintains the New York City Police Department as a constituent department or agency.

19.   At all times relevant hereto, the City of New York employed the defendant Police Officers involved in the incident described herein which caused Plaintiff's injuries to his body and mind without cause, reason or legal justification.

20.   The individual officers involved in this incident were at all relevant times mentioned in Plaintiff's Complaint, agents, servants and employees who acted for, upon and in furtherance of the business of their employer and within the scope of their employment as New York City Police Officers employed by City of New York and were duly appointed police officers in the New York City Police Department.

21.   Officers Argueta Manuel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, at all times mentioned herein acted within in their individual and official capacity and under color of law, that is under

color of law of the Constitution, statutes, laws, charter, ordinances, rules,  regulations, custom and usages of the State of New York and the City of New Yor at the time and date of this incident.

## JURY DEMAND

22.   Plaintiff demands trial by jury.

## NOTICE OF CLAIM

23.   That on or about October 6, 2023,  Plaintiff, in furtherance of his New York State causes of action, timely filed a Notice of Claim to the Comptroller of the City of New York located at 1 Centre St. Room 1225, New York, New York 10007, well within the statutory requirement of ninety days from the date of the incident alleged herein against the named Defendants and the City of New York, New York City Police Department and police officers Argueta Linares Manuel and John Does, ( now identified )1-6, in compliance with General Municipal Law Section 50-h.

24.   On October 12, 2023, the Comptroller of the City of New York acknowledge receipt of Franklin Hichez Baldemora' s timely filed Notice of Claim by assigning Claim Number 2023PI033546 to Plaintiff's Claim.

25.   That more than 30 days have elapsed since service of said notice, and the City has failed to pay or adjust the claim.

26.   This action has been commenced within one year and ninety days of the date of the incident complained of and of the filing of the notice of claim.

27.   That the Defendants have wholly refused and neglected to make any adjustment or payment thereof.

28.  That the Plaintiff has satisfactorily complied with all pertinent statutory requirements prior to the commencement of this action.

29.  That by reason of the foregoing, Plaintiff, Franklin Hichez Baldemora has been damaged in a sum which exceeds the jurisdictional limits of all lower courts, which otherwise would have jurisdiction over this action.

## STATEMENT OF FACTS

30.  On August 25, 2023 at approximately 9:00 pm, Mr. Baldemora borrowed a scooter from his friend, Luigi Reyes Pauqua to go to a local store near Boston Road in the Bronx, New York which was near Plaintiff's home on Rev James Ave.

31.  Mr. Hichez Baldemora never made it to his destination.

32.  As Plaintiff was riding the scooter on Boston Rd, he noticed that the gas meter on the scooter was near empty and decided to get some gas in a nearby gas station.

33.  Mr. Baldemora saw a BP gas station on Boston Rd and entered the station.

34.  As Plaintiff got off the scooter, he noticed several dark colored vehicles speeding towards him at the gas station and stopped directly in front of the Plaintiff.

35.  Mr. Baldemora got off the scooter and was walking away with his hands on his scooter when he was attached by several police officers without warning and tackled to the ground by six or seven police officers who had gotten out of three black unmarked vehicles and grabbed Plaintiff off his scooter without legal justification.

36.  The officers tackled the Plaintiff around his body by grabbing Plaintiff's knees and forced Mr. Baldemora to fall face down on the ground.

37.   Plaintiff, alarmed, and afraid, demanded to know why the officers had tackled him and jumped on top of his back yelling and cursing the Plaintiff. Mr. Baldemora was not armed and had not threatened the officers during course of the officer's attack.

38.   The officers jumped on top of the Plaintiff with their knees placed deep onto Mr. Baldemora' back.

39.   Several officers including officer Manuel had their feet on Plaintiff's back as Mr. Baldemora was laying on the ground pleading with the officers and demanding to know what was going on.

40.   The officers kept yelling" Where the fuck you going"? "Stupid motherfucker!"

41.   The Defendants continued their assault against Mr. Baldemora and grabbed and pulled Plaintiff's knees causing swelling and bruising and undue pain.

42.   Plaintiff continued to yell and scream as the officers failed to get off his back.

43.   The officers continued their unabated assault on the Plaintiff for several minutes.

44.   Mr. Baldemora felt extreme pain in his knees and back and had difficulty walking and standing after the officer's unprovoked attack.

45.   The officers lifted Mr. Baldemora up off the ground and placed Plaintiff in handcuffs and drove Plaintiff to the 42nd police station.

46.   Mr. Baldemora unable to walk told the officers he needed medical attention because he was hurt and couldn't walk.

47.   Plaintiff's knees were swollen from the attack.

48.   Mr. Baldemora asked the officers at the precinct to call for an ambulance.

49.   The officers refused to call for medical assistance and instead told Mr. Baldemora" You're good"!

50.    Mr. Baldemora remained in handcuffs and in pain for several hours inside a holding cell at the 42nd precinct.

51.    Plaintiff continued to complain about the pain throughout his knees and body and was told **to " chill out- you gonna get a Summons**". (emphasis)

52.    Mr. Baldemora suffered extreme pain to his left knee which required surgery due to the extreme and outrageous actions of the underlying police officers.

**Body -Worn-Cameras**

**a.  Officer Hadzovic**

53.    On August 25, 2023, at approximately 20:59:02, Body-Worn-Cameras (BWC) footage from police officer Eldon Hadzovic, Axon Body 3 X6031276Y, DEF 000430, captures an unmarked vehicle aggressively entering a BP gas station located in the Bronx. Officer Hadzovic is believed to be the driver of one of the unmarked vehicles, officer Husamedin Umer is shown seated in the front passenger seat next to officer Hadzovic.

54.    Officer Manuel Argueta Linares is believed to be seated in the rear passenger seat.

55.    Seconds later, another unmarked vehicle, (vehicle no. 2) driven by officer Alex Durst and carrying officer Sergeant Hosward M. Veloz in the front passenger seat with officer Jehad Mahmud in the rear seat following vehicle 1.

56.    The sudden and forceful arrival of the two unmarked vehicles, with their headlights trained directly on Mr. Baldemora, startles the Plaintiff and several other individuals at the gas station. Mr. Baldermora who was not riding his scooter, had merely grabbed his scooter and was walking away from the chaos towards the street when the unmarked vehicles stormed in.

57.    Plaintiff, scared and startled, and unaware that the persons in the unmarked vehicles were police officers due to the lack of any verbal commands, instinctively tried to move away from the threat posed by the men inside the unmarked vehicles.

b. **Officer Manuel Argueta Linares**

58.    At approximately 20:59;39, officer Manuel Argueta Linares. BWC, Axon Body 3 X6031299, DEF 069, activates in video mode only.

59.    Officer Linares can be seen exiting unmarked vehicle no. 1 and immediately grabbing an unidentified individual by his collar who was sitting on a bike in the gas station.

60.    Officer Linares saw other officer pursuing Mr. Baldemora who left the gas station and was walking his bike towards the street when officer Linares released the unknown individual and began to chase the Plaintiff.

61.    Moments later, as shown on officer Linares' BWC at frame 20:59:06, officer Linares abandons the pursuit of Franklin and turns his attention back to the unknown individual on the bike in an attempt to try and re-engage the individual he initially grabbed, but the persons eludes the officer by riding away.

62.    Frame 20: 59:19, shows officer Linares, falsely identifies himself as the arresting officers and issues three (3) Summons to Franklin Hichez Baldemora. The summons issued by officer Linares were based on the acts he witnessed involving the unidentified individual on a motor bike who rode away for which officer Linares failed to apprehend.

P.**O. Jehad Mahumd**
**Personal involvement-**
**<u>leaping up off the ground attacking Plaintiff</u>**

63.    On August 25, 2023, at approximately 20:59 (8:59 pm), P.O. Jehad Mahmud, upon information and belief, was equipped with an Axon Body Camera 3 device identified as

X60A33594 (DEF 431) personally participated in the assault against Franklin Baldemora by applying excessive and unreasonable force against the Plaintiff by leaping off the ground and going airborne launching himself with the full weight of his body, along with his tactical gear, body armor, firearm and Taser, directly onto Mr. Baldemora' s back, as Plaintiff was already subdued by other officers. See **Plaintiff's Exhibit No. 2**,  pg. 2.

64.   Mr. Baldemora was helpless, defenseless, injured and was already in custody by other officers at the time Officer Mahmud engaged in an outrageous act of unlawful use of force

65.   That prior to officer Mahmud's acts as set forth herein, at approximately 20:59:05, officer Mahmud can be seen on video seated in the rear passenger seat of an unmarked police vehicle, (vehicle no. 2), which was driven by police officer Alex Durst, with Sergeant Hosward M. Veloz who was seated in the front passenger seat.

66.   The vehicle can be seen making an aggressive right turn into a gas station, nearly striking Mr. Baldemora, who was maneuvering his scooter across the lot while visibly startled and blinded by the vehicle's headlights. This maneuver is captured on Sergeant Veloz's body worn camera, Axon Body 3 X6031198B. DEF 071 which as activated at 20:58::19. Although the video was recording, the audio on officer Veloz's camera remained off until 20:59:19.

67.   At no point did Plaintiff mount his bike.

68.   At approximately 20:59:10, officer Mahmud exited the vehicle and joined the pursuit of Mr. Baldemora along with Sergeant Veloz and officer Durst. That at no time were verbal warnings, commands or any commands such "stop, police" utter by any of the officers on the scene including officer Mahmud.

69.   At approximately 20:59:10, upon information and belief depicts police officer Zuopeng Zheng, Shield No. 25461, is shown on video camera yanking Mr. Baldemora by his left arm while Plaintiff was walking his Moped, or scooter.

70.   This sudden and outrageous use of force caused Mr. Baldemora to lose his balance and extend his right leg forward while his left knee twisted at an unnatural angle- resulting in visible injury to his left knee.

71.   This incident is captured from three separate different angles, 1) officer Mahmud's body camera -DEF 431, 2) office Durst's body cameral, DEF 070, and 3), Sergeant Veloz's camera, DEF 071.

72.   Officer Mahmud's airborne dive was captured on his body cam DEF 431, at 20:59:12.

73.   **Officer Mahmud's airborne dive into Franklin's back** was not preceded by any observable threat, resistance or justifiable circumstances, as s direct result Plaintiff sustained significant injuries to his knee.

74.    Mr. Baldermora at the time of Officer Mahmud's outrageous and extreme conduct, was in the process of being subdued by multiple police officers who had grabbed Plaintiff off his scooter.

75.   Officer Mahumd acts were captured from multiple angles including officer Alex Durst's body camera DEF 070, which shows Officer Mahmud's dive in clear view. The impact further drove Mr. Baldemora to the ground increasing his physical pain, suffering and mental distress and contributing to the pain to his knee.

76.   Further, at approximately 20:59:18, as captured on Seargent Veloz's body camera, DEF 071, officer Mahmud is observed **aggressively bending and twisting Mr. Baldemora' s arms-**

**first the left, then the right- before placing the Plaintiff in handcuffs.** This unjustifiable use of force occurs while Plaintiff was already injured and visibly in pain.

77.    At no time throughout this ordeal did Plaintiff demonstrate any resistance to the officers to have justified the unreasonable use of force inflicted upon him by the defendants as police officers of the City of New York.

78.    Officer Mahmud made no visible effort to assess Mr. Baldemora' s medical condition or to consider alternatives to the use of addition force.

79.    No de-escalation techniques were employed by Officer Mahmud prior to his jumping of Plaintiff's back.

80.    **The application of force invoked by officer Mahmud -his airborne tackle followed by his aggressive physical manipulation of Mr. Baldemora's limbs, was grossly disproportionate to the circumstances and lacked any legal justification.**

81.    Taken in context, officer Mahmud's conduct constitutes a direct violation of Plaintiff's clearly established constitutional right to be free from unreasonable seizure and unreasonable use of force set forth in the Fourth Amendment to the Constitution of the United States.

**Sergeant Hosward M. Veloz**
**Personal involvement. BWC DEF 071,**
**Axon Body 3 X6031198B**

82.    On August 25, 2023 at approximately 20:59:02, Body- Worn Camera (BWC) footage from officer Eldon Hadzovic, Axon Body 36031276Y, Bates No. DEF 000430, captures an unmarked vehicle, (vehicle no. 1) aggressively entering the BP gas station.  Officer Hadzovic is the driver of this first vehicle. Officer Husamedin Umer is seated in the front passenger seat. Officer Linares is seated in in the rear passenger seat.

83.  That despite Plaintiff being injured, and nonresistant, Sergeant Veloz intentionally escalates the situation causing severe harm to Mr. Baldemora.

84.  That at approximately 20:59: 12, officer **Veloz launches himself directly onto Plaintiff's back.**

85.  Officer Veloz, can clearly be seen grabbing Plaintiff by his neck and head and slamming Mr. Baldemora to the ground with the full weight of officer Veloz.  Plaintiff suffered extreme harm and injury to his body.

86.  Simultaneously, officer Mahmud can be seen leaping into the air and crashes his body down onto Franklin's back, compounding Franklin's injuries.  This sequence is also captured on officer Drust's body camera Axon Body 3 X60320433.

87.  Officer Veloz continues his assault against Mr. Baldemora by restraining Plaintiff on the ground.  At no point does officer Veloz or any other officer issue any commands such as "stop" or "police" during their pursuit of the Plaintiff.  Instead, the officers tackled Plaintiff and jumped onto his back and body causing severe pain and suffering.

88.  Sergeant Veloz failed to activate his BWC audio until 20:59: 19, after Mr. Baldemora was already lying face down on the ground and visibly injured.

**Officer Mahmud**
**Seen bending and twisting Franklin's knees.**

89.  That at 20:59: 18, officer Veloz's BWC shows officer Mahmud aggressively bending and twisting Plaintiff's arms behind his back to handcuff him, causing further pain and undue suffering to Mr. Baldemora.

90.   That despite observing the pain Mr. Baldemora was experiencing and Plaintiff's repeated complaints" **Ya hurt my knee**", BWC 21:00:15, officer Veloz and other police officer began to mock Mr. Baldemora saying" you did it to yourself"!" You shouldn't have run, why you run"?

91.   Officer Durst rode Plaintiff's scooter. back to the police station.

92.   Despite the severity of Franklin's injuries, none of the officers called for medical treatment at the scene of the incident. Instead, the officers can be heard saying" you're good" and left Plaintiff in pain.

**Officer Zoupeng Zheng's
Personal involvement**

93.   As Mr. Baldemora was walking his scooter away from the BP gas station, officer Zheng approached Plaintiff from the left side of Plaintiff's body, officer Zheng can be seen yanking Mr. Baldemora' s left arm toward himself. This unexpected and unreasonable act caused Franklin's left knee to buckle causing Plaintiff to fall to the ground in visible pain.

94.   The forced initiated by officer Zheng initiated Plaintiff's injury.

**Officer Megan L. Walsh
Personal involvement.**

95.   Officer Walsh was standing in front of the Plaintiff blocking his movement. Officer Walsh then proceeded to approach the left side of the Plaintiff's body.

96.   Officer Walsh then pulled officer Zheng's backwards toward her while officer Zheng was pulling Franklin's arm, compounding the force inflicted on Mr. Baldemora.

97.   Both officers, Walsh and Zheng effectively pulling Franklin's arm from the same side in the same direction leading to torque and strain that directly caused the intimal trauma to the Plaintiff's knee. See **Plaintiff's Exhibit No. 2**, at pg. 5and 6.

98.   Officer Walsh is clearly shown seen on multiple officers' body cameras yet her own BWC was never activated despite being visible present and affixed to her person.

99.   This clear violation on NYPD policy deprived the public and Frankil of direct footage from her vantage point and raises serious concerns about her intent to conceal her involvement.

100.   At approximately 20:59:00, as an unmarked vehicle no.1, stormed into the gas station lot in an aggressive and unannounced manner, Franklin startled and unaware that the occupants were law enforcement officers, instinctively attempted to walk away toward the street.

101.   Franklin grabbed his bike but never rode it. He did not resist or flee, rather the Plaintiff sought to remove himself from harm and the chaotic and threatening situation created by the underlying police officers.

102.   As Franklin attempted to reach the street, officer Walsh physically impeded his movement by position herself to the left side of Franklin's body and slightly in front, which blocked Franklin's route.

103.   At the same moment, officer Zheng approached from Franklin's left and yanked Franklin's left arm violently toward himself.  Critically, officer Walsh is seen reaching toward Zheng and pulling him backward toward her body while he was still holding Franklin's arm.  This act by officer Walsh added a significant degree of leverage and force to officer Zheng's pull.  The result was devastating.

104.   Franklin's left knee bent at an unnatural angle and he collapsed to the ground in intense pain.

105.   This gruesome moment was captured on Sergeant Hosward Veloz's BWC Axon Body 3X6031198B at 20:59:10 showing Franklin being pulled to his knees.

106.   The injury was immediate and severe.  After officers forcefully searched Franklin, the Plaintiff attempted to walk, now clearly limping.  At 21:00:15, as seen on Sgt. Veloz's BWC, Franklin uttered the words "**YA HURT MY KNEE**", making it mistakenly clear to all officers present that he was injured.

107.   Instead of officering assistance or medical attention, Officer Walsh is heard laughing alongside officer Durst and Aheng.  Officer Walsh displays compete indifference to Franklin's suffering.

108.   At 21:00:40, officer Walsh's voice is captured mocking Franklin and speculating that he may be homeless and that the biker might be stolen, despite having no legal or factual basis for such an assumption.

109.   Officer Walsh's conduct demonstrate a complete lack of professionalism and a callous disregard for the humanity of the individual she helped injure.

110.   Moreover, Walsh's conduct is particularly egregious given her failure to activate her body-worn camera, a tool designed specifically to ensure transparency and accountability in situations exactly like this one.

111.   Walsh's direct physical contact with the Plaintiff contributed to the force used against Franklin, as P.O. Walsh can clearly be seen on video cam blocking Plaintiff's path, and pulling officer Zheng while Frankin was being seized as well as her mockery of the Plaintiff, all contributed to the false arrest, imprisonment and excessive force that defined this incident.

112.   Officer Walsh, along with Zheng, Velox, Mahmud, Umer, Durst and Linares, contributed to a coordinated act of aggression against Mr. Baldemora.  Officer Walsh's action, both physical and verbal- escalated and compounded Franklin's injuries, a tibial plateau fracture to his left

knee which required surgical intervention and prevented Plaintiff from working and providing the love and care and financial support to his family for eight months.

**Officer Durst's**
**Personal Involvement.**

113.   Officer Durst, BWC, 3 X60320433 DEF, 070 is believed to be the driver in an unmarked vehicle.

114.   Officer Durst gave chase after Plaintiff and assisted in the unlawful arrest of the Plaintiff.

115.   Officer Durst made an aggressive right turn into the gas station nearly striking Franklin who was temporarily blinded by the headlights and unaware of the identities of the men as NYPD officers   who was attempting to walk his scooter toward the street.

116.   Officer Durst is heard at 21:02:07, telling the other officers to" let the other guy go" while riding Franklin's scooter back to the station which indicates that Franklin was misidentified and wrongfully targeted by the underlying officers.

117.   Officer Durst can be seen riding Plaintiff's scooter to the police precinct.

**Officer Hadzovic**
**Personal Involvement**

118.   Officer Hadzovic according to his BWC, Axon Body 3 X 6031276Y, DEF 0430, is believed to be the driver of another unmarked vehicle No.

119.   At 20:58:41, Hadzovic BWC begins recording as he drives an unmarked vehicle No 1, into the BP gas station.

120.   At 20:59:02, officer Hadzovic can be seen making an aggressive turn into the station which startles Mr. Baldemora who had not committed any crime and was walking his scooter towards the street.

121.   The officers failed to produce any video showing Franklin riding his scooter on a public sidewalk and creating a public nuisance or endangering the public as claimed by the arresting officer Linares.

122.   Officer Hadzovic entered the gas station at a high rate of speed without any siren or lights of reflecting the fact that he or any other officer were in fact police officers.

123.   Officer Hadzovic's BWC captures officers Argueta Linares and Officer Husamedin confronting another individual who had been seated on a separate bike, at 20:59:06.

124.   Officer Manual is seen grabbing the other individual by the collar but lets him go in order to pursue Franklin.  Hadzovic and Umer attempt to pursue the other individual who fled but failed to do soc which can be seen on both Hadzovic's and Umer's BWC, DEF 000430, and DEF 000429, respectively.

125.   The unidentified male rider eludes the officers which is shown on officer Manuel's BWC at Def 000430, at 20:59:19.

126.   Mr. Baldemora was never seen riding his scooter, never rode his scooter on the sidewalk as falsely claimed by officer Linares. Officer Hadzovic never attempted to correct the false narrative against Franklin Baldemora. 128.  In fact, his BWC later shows him observing Franklin limping in pain, being walked approximately 40 feet back to an unmarked vehicle by officer Umer and Mahmud.

127.   At 21:00:19, officer Hadzovic's camera shows Franklin visibly struggling to walk, clearly favoring his left knee which had been seriously injured moments earlier during a violent takedown involving officers Zheng, Walsh, Veloz and officer Mahmud.

128.   Officer Hadzovic witnessed Franklin's inability to walk and his limp, his cries of pain, and the disregard for his condition. Hadzovic's BWC at 21: 01:01, captures officer Mahmud digging

through Franklin's pockets. Franklin was clearly in distress, hunched over and in pain as shown inside the police vehicle.

129. Hadzovic's camera also captures conversations between himself, Sergeant Veloz and officer Umer, where they continue discussing the suspect who fled. 21:01:33.

130. Despite being present at nearly every stage from the aggressive stop, the failed pursuit and the visible injury to the Plaintiff, Officer Hadzovic failed to intervene, failed to correct the false narrative created by the arresting officer and permitted a wrongful arrest and unreasonable seizure of Franklin Baldemora.

131. Officer Hadzovic's failure to identify, report or stop the false arrest of Franklin, despite knowing the person who actually fled, and his silent complicity in Franklin's suffering, demonstrated a clear violation of Franklin's protected rights arising under the Fourth and Fourteenth Amendments to the Constitution of the United States.

132. Officer Hadzovic's conduct contributed to the false imprisonment, unreasonable seizure and excessive use of force inflicted upon Franklin Baldemora.

**Officer Umer**
**Personal Involvement**

133. Officer Umer wearing Axon Body camera 3 X60324673, Bates No DEF 429, played a direct and integral role in the unlawful seizure and subsequent exacerbation of Plaintiff's injuries suffered on August 25, 2023.

134. Though officer Umer did not initiate contact with Mr. Baldermora directly, his pursuit tactics, coordination with other officers and his physical handling of the Plaintiff solidify his liability to Franklin for false arrest and imprisonment and excessive force that ultimately led to a serious orthopedic injury to the Plaintiff.

135.  As captured on officer Umer's body camera, at 20:59:07, officer Umer is seen grabbing the front of the gas-powered moped belonging to another individual, not Franklin Baldemora.  136. Umer briefly chases the Plaintiff as Mr. Baldermora was walking away from the gas station holding his moped, clearly reacting to the sudden and aggressive approach of the unmarked vehicles. Officer Umer's pursuit is half -hearted and brief.

136.   Officer Umer quickly retreats back to the original individual who is now seen acerating away o his bike.  At 20:59:13, Umer's BWC, captures officer Hadzovic attempting to grab the back of that individual's bike just before he escapes. By 20:59:22, both Umer and Hadzovic discontinue their chase, having failed to apprehend the individual

137.   At 20:59:47, officer Umer's audio turns on for the first time on his BWC, just as he arrives at the location where Franklin is being seized and brutalized by several officers.  By this time officer Zoupeng Zheng had already yanked Franklin's left arm toward him and officer Walsh, standing in front of Franklin had pulled on Zheng's body adding extra force to the leverage used to pull Franklin toward them causing Franklin's left knee to buckle unnaturally and drop him to the ground in visible pain.

138.   Officer Umer not only failed to apprehend the individual suspected of wrongdoing but also contributed directly to the false imprisonment of an innocent man, Franklin Baldemora.

139.  Officer Umer's physical handling of Mr. Baldemora contributed to the excessive force used during Plaintiff's unlawful seizure.

140.  Officer Manuel charged Plaintiff with **(1) Disorderly Conduct, Summons No. 4456587096, (2) Disorderly Conduct, Summons No. 4456587118, and (3) Reckless Driving, Summons No.4456587104.**

141.   Plaintiff was required to appear in Bronx Criminal Court on September 13, 2023.

142.  Mr. Baldemora promptly appeared in Court on the morning of September 13, 2023, and was informed by the Clerk of the Criminal Court that **there was no record of his arrest** or Court appearance and that the **Summons were dismissed**. (emphasis added)

143.  Plaintiff demanded a written record from the Court for proof that all charges had been dismissed due to the failure of the arresting officer to draft an accusatory instrument.

144.  Mr. Baldemora was told to come back on September 21, 2023.

145.  On September 21, 2023, Plaintiff arrived at the Bronx Criminal Court and was given a letter from the Criminal Court of the City of New York, County of Bronx which indicated state each of the Summons set forth above **had been dismissed because the NYPD had failed to file a legally acceptable accusatory instrument with the Court.** "There **is no need for you to return to count on the Summons number reference above". (emphasis added)**

**Injuries**

146.  On August 26, 2023, Mr. Baldemora withering in intense pain, sought medical treatment at Jacobi North Central Bronx Medical Center located at 1400 Pelham Parkway South, Bronx New York, for the extreme pain in his knees and body caused by the officers relentless and unprovoked attack.

 a) **diagnosis**

147.  Dr. Y. Bogdan, MD examined the Plaintiff and informed Mr. Baldemora that he had suffered " **a  closed fracture of lateral portion of left tibial plateau**".to his knee.

148.  Mr. Hichez Baldemora was given crutches to assist him in walking and to mobilize his knee.

149.  Mr. Baldemora was informed by the medical staff that he needed to consult with an Orthopedic Surgeon and was told to come back to the hospital on September 7, 2023.

**b) surgery**

150.   Plaintiff was admitted to **Jacobi North Central Bronx Medical Center on September 7, 2023 whereby Dr, Yelena Bogdan performed surgery on Plaintiff's left knee.**

151**.**   Mr**.** Baldemora remained in the hospital for four days and was **discharged on September 10, 2023.**

152.   That on the day of the incident, Plaintiff was employed by employed by the EDNYC, Economic Development Company located at 800 Food Center, Bronx, New York as an assistant plumber.

153.   That due to the officers' brutal and unprovoked attack on the Plaintiff's body and the resulting surgery, Mr. Baldemora was unable to work and could not provide financial support for himself and for his eight-month-old daughter.

154.   Plaintiff lost wages from work for eight months due to the surgery.

c): **Closed Fracture of Lateral Portion of Left Tibial Plateau**

155.   A Closed Fracture of Lateral Portion of Left Tibial Plateau has been defined as a **bone fracture or break in the continuity of the bone occurring the proximal (upper) part of the tibia(shinbone).** The tibial plateau is one of the **most critical loadbearing areas in the human body.** See **Joint Institute of North Texas.** ` (online report September 26, 2023)

156.   Fractures of the tibial plateau are often associated with injures to the anterior cruciate ligament, collateral ligaments and articular cartilage. **Id.**

   d)   **Insertion of Metal Plates in the Knee:**

157.    On September 7, 2023, doctors at the Jacobi Medical Center **performed an "Open Reduction Internal Fixation Left Tibial Plateau- Smith** and Nephew Plateau Lateral Plates, Osteotomes, Tamps, Regular Table , Supine, Bone Foam procedure on Mr. Baldemora 's knee.

The procedure was performed by Drs. Yelena Bogdan and Ally Morris to treat the injuries to his knee.

158.  Mr. Baldemora had difficulty walking due to the injuries to his left leg and knee and was given a leg brace for support.

   e) **Bledsoe Brace:**

159.  Mr. Baldemora was fitted with a **Bledsoe Brace on his left leg for the injuries** indicated for immediate application to knees for locked or limited motion control of knee during rehabilitation after operative procedures or injury to knee ligaments, cartilage, or stable or internally fixed fractures of the tibial plateau, condyles, or proximal tibia and distal femur.

f)  **Medication:**

160.   Mr. Baldemora was prescribed oxycodone to treat the constant pain in Claimant's knee and post operative surgery.

**g)   Emotional Trauma:**

161.  Plaintiff suffered and continues to suffer severe physical and emotional pain, distress and trauma from the senseless and unprovoked attack by the Defendants police officers.

162.  Plaintiff remains in constant pain and agony and has difficulty walking.

163.  Mr. Baldemora is currently undergoing physical therapy which was recommended by the medial staff at Jacobi Medical Center.

164.   Plaintiff was caused to suffer embarrassment, humiliation and degradation by officers Manuel and the John Does that attacked the Plaintiff without reason or justification.

165.   Mr. Baldemora posed no threat to the officers at time of his arrest and had not engaged in any criminal activity.

**NYPD Pattern and Practice
of failing to file accusatory
<u>instruments after arrest.</u>**

166.  The New York City Police Department has a long history, of arresting individuals without probable cause as indicated by knowingly and willfully failing to file accusatory instrument subsequent to arrestees' detention for which all charges against Defendant have been dismissed.

167.  That the history set forth herein within the New York City Police Department by the New York City Police Commissioner constitutes an unconstitutional pattern and practice by New York City Police officers of arresting individuals without probable cause by failing to draft and failing to file accusatory instruments.

168.  That the practice is known by and tolerated by policy makers of the City of New York including the past and present New York City Police Commissioners.

**History of prior arrestee's cases dismissed due to
NYPD officers' failure to draft accusatory instruments**

　　**a)  Clarence Ross**

169.  On November 2, 2018, September 10, 2018, September 17, 2020 ad December 9, 2020, **<u>Defendant, Clarence Ross</u>** was unlawfully arrested without probable cause and held in custody for hours upon hours voicing his innocence.

170.　Mr. Ross was arrested under arrests numbers, B18649496, B18641522, B20624083, B20624078, B20624080, and B20632684.

171.　That Concetta Petrillo, Deputy Bureau Chief Assistant District Attorney in the Bronx District Attorney's office, informed Mr. Ross in writing, that the above arrests had been dismissed because an accusatory instrument **<u>had not been drafted</u>**.

172.   That Mr. Ross was arrested by police officer Simpson, Tax Registration No.  959237, charged with illegal possession of burglary tools P.L. 140.35, Aggravated Unlicensed Operation, VTL 0511 03A2, Resisting Arrest, P.L.205.30, Obstruction of Governmental Administration, P.L. 195.05, Criminal Possession of a Firearm/Weapon, P.L. 265.01 901), and Disorderly Conduct, P.L. 240.20.

173.   The charges against Mr. Ross were never filed. Officer Simpson prepared the above arrest reports in the **44th police precinct**.

174.   That officer Simpson's supervisor at the precinct, Agt. Timothy J. Burke, approved the arrest reports prepared by officer Simpson.

175.    Yet, officer Simpson knowingly and willfully failed to draft the accusatory instruments and submit such documentation to the Bronx Criminal Court.

176.   That the Bronx District Attorney's Office dismissed the criminal case against Mr. Ross as set forth above.  Officer Simpson was upon information and belief, allowed to arrest and falsely accuse Mr. Ross without probable cause and without fulling his duty to draft and file the required criminal accusatory instruments associated with such arrests.

**b) Victor Mendeng**

177.   That on April 26, 2022, Peter Lomp, Assistant District Attorney Queens County informed Mr. Victor Mendeng that his arrest on April 26, 2022 had been **dismissed prior to Criminal Court arraignment.**

178.   Mr. Mendeng was arrested and charged with violating P.L. 160.10 02(A), Robbery in the 2nd Degree. A Class C Felony.

179.    Mr. Mendeng vehemently protested his innocence but to no avail as the arresting officer unlawfully caused Mr. Mendeng to be held in custody for three days without probable cause.

180.   The arresting officer, Detective Sheldon C. Franklin failed to bother to draft the accusatory instruments required by law and submit such draft to the Queens District Attorney's office.

181.   Mr. Mendeng case was dismissed and sealed.

   **c) Meyon Grant**

182.   That on September 24, 2021, Assistant District Attorney, and Deputy Bureau Chief, Concetta Petrillo, of the Bronx Office of the District Attorney wrote a letter to Ms. Grant indicating that **Ms. Meyon Grant's case, under arrest number B21624088 had been dismissed because, "An accusatory instrument was not drafted"**. (Emphasis added)

183.   On September 7, 2021, at approximately 5:26 pm, Ms. Grant and her cousin, (a minor whose name is protected and not disclosed), received an invitation from a friend to come and hang out at 1682 Seward Ave, Bronx, New York, a residential complex.

184.   Ms. Grant had never gone to this address prior to September 7, 2021.

185.   That Ms. Grant, had no physical control over the area in the living room nor did Plaintiff have any control over any property inside 1682 Seward, Ave. Bronx, New York at the time of her arrest.

186.   Plaintiff Grant did not live or reside at the above address nor was she a tenant or related to anyone inside the premises.

187.   Ms. Grant and her cousin went inside the apartment and sat down in the living room.

188.   That minutes after Ms. Grant had arrived inside the premises, Plaintiff heard a loud knock and banging on the front door.

189.   Ms. Grant heard someone outside the door yelling **"open the door if you don't open the door, you will be in more trouble".**

190.   Ms. Grant, fearing that something awful could occur, got up and opened the door.

191.    The police stormed inside the home and immediately seized two men inside the apartment who were in the back room to the apartment.

192.    That officer Sidneus then told Ms. Grant and her cousin that they were under arrest.

193.    Ms. Grant, a twenty-year-old African American female protested her arrest and repeatedly asked the officers why she was being arrested.

194.    Ms. Grant was held in custody for twenty-four hours without probable cause.

195.    Officer Sidneus created police arrests reports in the 43rd police precinct accusing Ms. Grant of Criminal Weapons Possession. No weapon was found on Ms. Grant who was an invitee in the premises and had only been in the residence for several minutes.

196.    Again, an officer in the New York City Police Department, knowingly and willfully failed to draft the accusatory instrument formally charging then Defendant Grant of a Crime.

197.    Ms. Grant's was caused to appear in court and found that her case was dismissed because the officer failed to draft the accusatory instrument.

   d) **Bevline Nembhard**

198.    That on March 21, 2022, Bevline Nembhard, received written notification that her arrest on March 25, 2021, in Bronx, County, under arrest number B21608937 had been dismissed because the Bronx District Attorney office declined to prosecute because "an accusatory instrument was not drafted".

199.    That this office represented the Plaintiff's in the above actions whose criminal cases were dismissed due to the failure by law enforcement officers to file accusatory instruments.

200.    That the failure to file accusatory instruments is indicative of a policy and practice by the New York City Police Department of arresting individuals without probable cause.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST OFFICERS ARGUETA
LINARES MANUEL, P.O. ELDON HADZOVIC, P.O. JEHAD MAHMUD, P. O,
HUSAMEDIN UMER, P.O. SGT. HOSWARD VELOZ, P. O. ALEX DURST, P. O.
ZOUPENG ZHENG, And P.O. MEGAN L. WALSH FOR VIOLATING PLAINTIFF'S
RIGHTS TO BE FREE FROM UNREASONABLE SEIZURE AND UNREASONABLE
USE OF FORCE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO
THE CONSTITUTION OF THE UNITED STATES**

201.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs 1 through 200, with the same force and effect as though more fully set forth at length herein.

202.   On August 25, 2023 at approximately 9:00 pm, Mr. Baldemora borrowed a scooter from his friend, Luigi Reyes Pauqua to go to a local store near Boston Road in the Bronx, New York which was near Plaintiff's home on Rev James Ave.

203.   As Plaintiff was riding the scooter on Boston Rd, he noticed that the gas meter on the scooter was near empty and decided to get some gas in a nearby gas station.

204.   As Plaintiff got off the scooter, he noticed several dark colored vehicles speeding towards the gas station and turned directly in front of the Plaintiff.

205.   Mr. Baldemora got off the scooter and was immediately tackled to the ground by six or seven police officers who had gotten out of the black unmarked vehicles.

206.   The officers tackled the Plaintiff around his body by grabbing Plaintiff's knees and forced Mr. Baldemora to fall face down on the ground.

207.   The officers proceeded to jump on top of the Plaintiff with their knees placed deep into Mr. Baldemora' back.

208. Several officers including officer Manuel had their feet on Plaintiff's back as Mr. Baldemora was laying on the ground pleading with the officers and demanding to know what was going on.

209.   The officers kept yelling" Where the fuck you going"? "Stupid motherfucker!"

210.   The Defendants continued their assault against Mr.  Baldemora and grabbed and pulled Plaintiff's knees.

211.   Plaintiff continued to yell and scream in pain as the officers kept their knees into Mr. Baldemora's back.

212.   The officers continued their unabated assault on the Plaintiff for several minutes.

213.   Plaintiff felt extreme pain in his knees and back and had difficulty walking or standing up after the officer's unprovoked attack.

214.   The officers lifted Mr.  Baldemora up off the ground and placed Plaintiff in handcuffs and drove Plaintiff to the 42nd police station.

215.   Mr. Hichez Baldemora was in extreme pain and told the officers he needed medical attention because he was hurt and couldn't walk.

216.   Plaintiff's knees were swollen from the attack.

217.   Mr. Baldemora asked the officers at the precinct to call for an ambulance.

218.   The officers refused to call for medical assistance and instead told Mr. Baldemora" Your good"!

219.   Mr. Baldemora remained in handcuffs and in pain for several hours inside a holding cell at the 42nd precinct.

220.   On August 26, 2023, Mr. Baldemora withering in intense pain sought medical treatment at Jacobi North Central Bronx Medical Center located at 1400 Pelham Parkway South, Bronx New York, for the extreme pain in his knees and body.

221.   Dr. Y. Bogdan, MD examined the Plaintiff and informed Mr. Baldemora that he had suffered "a **closed fracture of lateral portion of left tibial plateau**".to his left knee.

222.   Mr. Hichez Baldemora was given crutches to assist him in walking and to mobilize his knee.

**Surgery**

223.   Plaintiff was admitted to **Jacobi North Central Bronx Medical Center on September 7, 2023, whereby Dr, Yelena Bogdan performed surgery on Plaintiff's left knee.**

224.   Mr**.** Baldemora remained in the hospital for four days and was **discharged on September 10, 2023.**

225.   That due to the officer's wanton and brutal attack on the Plaintiff's body and the resulting surgery, Mr. Baldemora was unable to work and could not provide financial support for his eight-month-old daughter.

226.    Plaintiff will not be able to return to work for at least five months.

227.   The force inflicted on the Plaintiff by the Defendants, officers Manuel and John Does 1 through 6, caused Plaintiff to suffer a Closed **Fracture of Lateral Portion of Left Tibial Plateau** as described more fully in the preceding paragraphs.

**Insertion of Metal Plates in the Knee:**

228.   On September 7, 2023, doctors at the Jacobi Medical Center **performed an "Open Reduction Internal Fixation Left Tibial Plateau- Smith** and Nephew Plateau Lateral Plates, Osteotomes, Tamps, Regular Table , Supine, Bone Foam" procedure performed by Drs. Yelena Bogdan and Ally Morris to treat the injuries to his knee. (emphasis added)

229.   Plaintiff experience difficulty walking due to the injuries to his left leg and knee.

230.   Mr. Baldemora was harassed, beaten, arrested, ridiculed and humiliated by the Defendants police officers who use extreme, excessive, and unreasonable force in arresting the Plaintiff without probable cause or legal justification.\

231.   Mr. Baldemora was unreasonably seized by officers Argueta Linares Manuel, P.O. Eldon Hadzovic, Jehad Mahmud, P. O, Husamedin Umer, P.O. Sgt. Hosward Veloz, P. O. Alex Durst, P. O. Zoupeng, Zheng, and P.O. Megan L. Walsh all of whom knowingly and willfully violated Plaintiff's Constitutional right to be free from unreasonably seizure and excessive use of force during the course of an unlawful arrest.

232.   Mr. Baldemora posed no threats against the arresting officers at any time prior to or during the course of his arrest.

233.   The Fourth Amendment forbids the use of substantial force against a non-threatening suspected misdemeanant who is not fleeing, resisting arrest or posing any risk to the safety of others.

234.   For the reasons set forth herein, officers Manuel, P.O. Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, are liable to the Plaintiff pursuant to 42 U.S.C Section 1983, for the physical injuries and emotional distress due to the officers' unreasonable and unlawful seizure and unreasonable use of force in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

235.   Defendant police officers acted within the scope of their employment as New York City Police officers in their individual and official capacity and under color of law, conspired together and with others and reached a mutual understanding to undertake a course of conduct that violated Plaintiff's Constitutional rights in furtherance of their employers' business.

236.   As a direct and proximate result of the conduct exhibited by the Defendants, Plaintiff was caused to suffer severe physical and emotional pain and suffering.

237.   The force used in arresting the Plaintiff was extreme, excessive, unnecessary and objectively unreasonable.

238.   As a consequence, thereof, Franklin Hichez Baldemora has been greatly injured.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST THE CITY OF NEW YORK PURSUANT TO 42 U.S.C SECTION 1983 FOR A PATTERN AND PRACTICE OF FAILURE TO TRAIN, SUPERVISE OR DISCIPLINE POLICE OFFICERS FOR ARRESTING PLAINTIFF AND OTHER INDIVIDUALS WITHOUT PROBABLE CAUSE AS SHOWN BY FAILURE TO DRAFT AND FILE ACCUSATORY INSTRUMENTS**

239.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs Numbered "1" through "238", with the same force and effect as though more fully set forth at length herein.

240.   An accusatory instrument, similar to a criminal complaint is a document which formally accuses a defendant of a criminal offense. Generally, this document must be signed by a party who has knowledge that the alleged criminal conduct took place.

241.   Arresting officers have a duty under the law to draft and file accusatory instruments prior to or at the time of the required appearance of the arrestees.

242.   New York Consolidated Laws, Criminal Procedure Law - **CPL § 150.50** Appearance ticket; filing a local criminal court accusatory instrument; dismissal of insufficient instrument states as follow:

   "1.   A police officer or other public servant who has issued and served an appearance ticket must, at or before the time such appearance ticket is returnable, **file or cause to be filed with the local criminal court in which it is returnable a local criminal court accusatory instrument charging the person named in such appearance ticket with the offense specified therein**. Nothing herein contained shall authorize the use of a simplified information when not authorized by law. (emphasis added)

   2.   If such accusatory instrument is not sufficient on its face, as prescribed in section 100.40, and if the court is satisfied that on the basis of the available facts or evidence it would be

impossible to draw and file an accusatory instrument which is sufficient on its face, it must dismiss such accusatory instrument."

243. That officer Manuel knowingly and willfully failed to adhere to the provisions under CPL 150.50 and failed to draft and file an accusatory instrument charging Plaintiff Franklin Hichez Baldemora with any crime or offense which is indicative of lack of probable cause for the arrest on August 25, 2023.

244. The New York City Police Department has established an unwritten policy or practice of allowing officers to arrest individuals without filing accusatory instruments in local criminal court, Bronx County Criminal Court, Queens County Criminal Court as indicated in the preceding paragraphs which is indicative of arresting innocent individuals without the requisite probable cause in accordance with the Fourth Amendment to the Constitution of the United States.

245. That at all time herein mentioned police officers Manuel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh directly participated and caused Plaintiff's arrest, injuries, detention, imprisonment, and deprivation of Plaintiff's liberty by arresting Plaintiff without probable cause to have reasonably believed Plaintiff had committed a crime or offence.

246. Officer Argueta Linares Manuel knowingly and willfully engaged in a violent use of excessive force and held Plaintiff in custody for several hours and arrested Mr. Baldemora for disorderly conduct without describing the conduct for which Plaintiff was arrested.

247. That officer Manuel failed to draft and submit **an accusatory instrument describing the criminal conduct to the Bronx Criminal Court. (emphasis added)**

248.  That the City of New York has been aware of police officers' willful and intentional failure to draft and file written accusatory instruments supporting accusations of criminal conduct by individuals arrested by members of the NYPD. .

249.  That at all relevant times the City of New York, with deliberate indifference to the risk of injury of incarceration to innocent members of the public, failed to train, supervise or discipline police officers who knowingly and willfully failed to draft and file accusatory instruments as required pursuant to **CPL Section 150.50.**

250.  That the policy, custom ,and or practice by the New York City Police Department and its police officers who knowingly failed to train, supervise and or discipline police officers who arrest members of the public and fail to draft accusatory instruments is indicative of a widespread policy of allowing police officers to make unlawful arrests causing individuals the loss of liberty and emotional distress of being denied their right to liberty without probable cause.

251.  That the failure to properly train, supervise and or discipline New York City Police officers for knowingly and willfully failing to draft accusatory instruments and submit such instrument to the Courts is indicative of lack of probable cause for such arrests which presents a clear and present danger to the public that their constitutional rights will be infringed by an unconstitutional de facto policy of allowing police officers to deliberately arrest individuals without probable cause.

252.  That the City of New York. has known and tolerated the unconstitutional policy and practice which served as the moving force behind Plaintiff' arrest.

253.  That officer Manuel directly and proximately caused the violation of Plaintiff's Constitutional rights arising under the Fourth and Fourteenth Amendments to the Constitution of

the United States with the specific intent to cause Plaintiff Franklin Hichez Baldemora emotional

harm by arresting Plaintiff without probable cause.

254.  The acts complained of herein, were carried out by the Defendants police officers in their

official capacity as police officers of the New York City Police Department pursuant to the

customs and practices of the New York City Police Department or as a result of the City of New

York's failure to train, supervise or discipline the Defendant officers.

255.  The City of New York through its policy makers, including the Commissioners of the New

York City Police Department and its agents were fully aware of and did nothing about its police

officers engaging in arresting individuals such as the Plaintiff without probable cause and

without filing or drafting accusatory instruments as required by law.

256.   As a direct and proximate result of the City's failure to train, supervise or discipline the

Defendant officers for failure to file written accusatory instruments constitutes deliberate

indifference which caused Plaintiff to sustained damages as set forth herein.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST POLICE OFFICERS
ARGUETA LINARES MANUEL, P.O. ELDON HADZOVIC, P.O. JEHAD MAHMUD,
P. O, HUSAMEDIN UMER, P.O. SGT. HOSWARD VELOZ, P. O. ALEX DURST,
P. O. ZOUPENG ZHENG, And P.O. MEGAN L. WALSH   FOR FALSE ARREST AND
FALSE IMPRISONMENT PURSUANT TO 42 U. S.C. SECTION 1983.**

257.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in

Paragraphs Numbered "1" through "256", with the same force and effect as though more fully

set forth at length herein.

258.   That at all time herein mentioned Defendants police officers Argueta Linares Manuel,

Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng,

Zheng, and P.O. Megan L. Walsh, directly participated and caused Plaintiff's injuries and false

arrest, detention and deprivation of liberty by arresting Mr. Baldemora as more fully described in the preceding paragraphs, without probable cause.

259.    That the officers knew that there was no reasonable basis for Plaintiff's arrest, detention, harassment, and excessive force which caused Plaintiff to undergo surgery to his knee and which requires months of physical therapy.

260.    Mr. Baldemora was unreasonably held in custody unable to move and unreasonably seized and arrested by the Defendant police officers.

261.    Plaintiff was conscious of his arrest, detention and seizure and did not consent to his confinement.

262.    The Defendant's arrest, seizure and detention of Mr. Baldemora lacked probable cause.

263.    Defendants', officers Mauel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, as police officers in the City of New    York, assaulted, battered, detained and confined Plaintiff and acted in substantial abuse of their power as New York City Police Officers and acted beyond their authority.

264.    The officers willfully, knowingly, and intentionally deprived Plaintiff of his right to liberty and freedom under the Fourth and Fourteenth Amendments to the Constitution of the United States, secured by 42 U.S.C Section 1983.

265.    Defendants forcibly handcuffed, searched, seized, assaulted, and subjected Plaintiff to undue humiliation, personal degradation, abuse, emotional distress, trauma, embarrassment, ridicule, and scorn without legal justification.

266.    As a direct and proximate result of Officers' Manuel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh,

misconduct, and abuse of authority described above; Plaintiff Franklin Hichez Baldemora

sustained damages and seeks financial compensation in accordance with 42 U.S.C. Section 1983.

**AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF AGAINST THE DEFENDANT POLICE OFFICERS, ARGUETA LINARES MANUEL, P.O. ELDON HADZOVIC, P.O. JEHAD MAHMUD, P. O, HUSAMEDIN UMER, SGT. HOSWARD VELOZ, P. O. ALEX DURST, P. O. ZOUPENG ZHENG, And P.O. MEGAN L. WALSH FOR ASSAULT UNDER THE COMMON LAW OF THE STATE OF NEW YORK.**

267.   That Plaintiff repeats, reiterates and realleges each and every allegation contained in

Paragraphs Numbered "1" through "266", with the same force and effect as though more fully

set forth at length herein.

268.   That the Defendants, their agents, servants and /or employees, without cause or

justification, or the consent of the Plaintiff, intentionally placed the Plaintiff in imminent fear of

physical harm by the manner in which Defendants Argueta Linares Manuel, Eldon Hadzovic,

Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O.

Megan L. Walsh, threatened Mr. Baldemora when the officers drove into the BP gas station and

without announcing that they were police officers rushed out of their vehicles and ran towards

the Plaintiff in a threatening manner .

269.   Mr. Baldemora was caused to fear for his safety and for his life.

270.   That by reason of the foregoing the Plaintiff has been unlawfully injured and seeks

compensation against the Defendant officers for inflicting unnecessary pain, suffering, physical

and emotional distress.

271.   Defendants, Manuel and police officers Eldon Hadzovic, Jehad Mahmud, Husamedin

Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh,

intentionally placed Plaintiff in apprehension of fear and imminent harm and offensive contact by the Defendant officers' unlawful and unprivileged threat of force use of force against the Plaintiff causing severe emotional injuries to the Plaintiff, for which Plaintiff now seeks compensation.

272.   That Plaintiff had reasonable apprehension of imminent harm due to the Defendants offensive actions against the Plaintiff.

273.   The Defendant police officers intentionally placed Plaintiffs in reasonable fear of an imminent battery.

274.   As direct and proximate result of the Defendant officers' misconduct, Plaintiff suffered humiliation, degradation, embarrassment pain, suffering, and mental anguish.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST THE DEFENDANTS, POLICE OFFICERS ARGUETA LINARES MANUEL P.O. ELDON HADZOVIC, P.O. JEHAD MAHMUD, P. O, HUSAMEDIN UMER, SGT. HOSWARD VELOZ, P. O. ALEX DURST, P. O. ZOUPENG ZHENG, AND P.O. MEGAN L. WALSH FOR BATTERY PURSUANT TO THE COMMON LAW OF THE STATE OF NEW YORK.**

275.   That the Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs Numbered "1" through "274" with the same force and effect as though more fully set forth at length herein.

276.   That by reason of the foregoing and by officers Argueta Linares Manuel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh's acts of grabbing Mr. Baldemora, jumping in midair and leaping  on his back, pulling Plaintiff and slamming Plaintiff 's body on the ground jumping on top of Mr. Baldemora's back caused Plaintiff extreme pain and suffering and injury to his left knee which required a surgical procedure to address a fractured tibial plateau, hence the officers committed a

willful, unlawful, unwarranted and intentional battery upon Plaintiff Franklin Hichez Baldemora without legal justification.

277.   That as a result of the foregoing battery on the part of the Defendants, Plaintiff was caused to suffer severe physical and emotional injuries.

278.   That Plaintiff has suffered and will continue to suffer agony in body, and mind.

279.   That based on the foregoing unreasonable actions of the Defendants, Plaintiff has been damaged and are hereby seeking compensation for his physical and emotional pain and suffering.

280.   That as a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained damages alleged herein.

## AS AND FOR AN SIXTH CAUSE OF ACTION AGAINST THE CITY OF NEW YORK FOR RESPONDEAT SUPERIOR PURSUANT TO THE COMMON LAW OF THE STATE OF NEW YORK

281.   That Plaintiffs repeats, reiterates and realleges each and every allegation contained in Paragraphs Numbered "1" through "280", with the same force and effect as though more fully set forth at length herein.

282.   That the City of New York, through the New York City Police Department, hired and supervised Defendants police officers Argueta Linares Manuel Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, who unlawfully and unreasonably seized the Plaintiff without probable cause and commenced an unspeakable assault and  battery which cause Plaintiff undue physical and emotional pain in furtherance of the business of the New York City Police Department..

283.   That officers Manuel Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, grabbed the Plaintiff without

reason or cause and jumped on Plaintiff's back and stuck their knees into Plaintiff's body as Mr. Baldemora lay with his face on the ground in agony.

284.    The Defendants acts were willful, intentional, and deliberate.

285.    That the Defendants committed the wrongs stated herein without probable cause, all done while acting under color of law and within the scope of their duties as employees of the City of New York and the New York City Police Department.

286.    As a result, the City of New is liable for the unlawful acts of their employees, police officers Argueta Linares Manuel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, pursuant to doctrine of Respondeat Superior.

**AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDENTS POLICE OFFICERS ARGUETA LINARES MANUEL AND POLICE OFFICERS, ARGUETA LINARES MANUEL P.O. ELDON HADZOVIC, P.O. JEHAD MAHMUD, P. O, HUSAMEDIN UMER, SGT. HOSWARD VELOZ, P. O. ALEX DURST, ZOUPENG ZHENG, AND P.O. MEGAN L. WALSH FOR INTENTIONAL INFLICTION OF EMOTIONAL STRESS UNDER THE COMMON LAW OF THE STATE OF NEW YORK.**

287.    That the Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs Numbered "1" through "286" with the same force and effect as though more fully set forth at length herein.

288.    That the Defendants, Manuel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, as police officers, agents, servants and/or employees, engaged in actions intended to inflict emotional trauma on the Plaintiff by arresting Plaintiff without probable cause. The individual defendants engaged in unlawful actions during the course of the stop, detention and seizure of Plaintiff Frankin Baldemora that were objectively unreasonable, extreme and outrageous.

289.   That by reason of the foregoing, the Plaintiff has suffered physical pain and suffering, mental and emotional distress due to Defendants' unlawful and reckless actions as more fully described herein.

290.   Mr. Baldemora's claim for the Intentional Infliction of Emotional Distress was caused by the Defendants, Argueta Linares Manuel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, as New York City Police officers who intentionally and without reason, privilege or probable cause seized the Plaintiff in an unreasonable manner and viciously employed force during the course of Plaintiff's arrest which caused Plaintiff to undergo surgery for the physical injury to Plaintiff's left knee.

291.   That the misconduct by officers Manuel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, was extreme and outrageous conduct, and intended to cause severe emotional distress.to the Plaintiff.

292.   That the officers' acts set forth above directly caused Plaintiff to suffer a sever injuries to his body and mind.

293.   Officers Manuel and police officers, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh's conduct toward the Plaintiff as described more fully in the preceding paragraphs, was extreme, and outrageous in degree and exceeded the bounds of decency expected in a civilized society.

294.   The acts committed against the Plaintiff by the defendant police officers was intended to cause the Plaintiff extreme physical damage to his mind and body.

295.   As a direct and proximate result of the misconduct and abuse of authority by Defendant police officers, Plaintiff has been injured and has sustained the damages hereinbefore alleged.

**AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS.
P.O. OFFICERS ARGUETA LINARES MANUEL AND POLICE OFFICERS,
ELDON HADZOVIC, JEHAD MAHMUD, HUSAMEDIN UMER, SGT. HOSWARD
VELOZ, ALEX DURST, ZOUPENG ZHENG, AND P.O. MEGAN L. WALSH FOR
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS PURSUANT TO THE
<u>COMMON LAW OF THE STATE OF NEW YORK</u>**

296.   That the Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs Numbered "1" through "295" with the same force and effect as though more fully set forth at length herein

297.   That officers Manuel, Eldon Hadzovic, Jehad Mahmud, Husamedin Umer, Sgt. Hosward Veloz, Alex Durst, Zoupeng, Zheng, and P.O. Megan L. Walsh, as members of the New York City Police Department owed a duty to the Plaintiffs to use reasonable care in the performance of their public function as police officers in the City of New York.

298.   That the officers breached their duty to the Plaintiff by arresting Plaintiff without probable cause and causing unnecessary and unreasonable physical and emotional pain and suffering to Plaintiff Baldemora who posed no threat to the officers at the time of his arrest.

299.   As a result of the negligent acts, Plaintiffs suffered severe emotional distress, mental trauma and bodily harm.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE,** Plaintiff respectfully request the following relief jointly and severally as against each of the Defendants:

   A.   Compensatory damages in the amount of $ 1,000,000) against each individual Defendant for the intentional infliction of unreasonable force which caused Plaintiff to suffer past, present and future physical and emotional injuries, pain and suffering.

B.   Awarding punitive damages to Plaintiff against each individual Defendant, in an amount that would punish each individual named police officer for their willful, wanton, reckless and malicious misconduct alleged in this Complaint that would effectively deter Defendants from future civil rights violations and other unlawful behavior in an amount to be determined at trial.

C.   Compensatory damages against the City of New York in the amount of

D.

E.   $ 1,000,000.

F.   An award to Plaintiff of the costs and disbursements herein.

G.   An award of reasonable attorney fees under 42 U.S.C. Section 1988.

H.   Such other and further relief as this Court may deem just and proper.


Dated: July 16, 2025
            Bronx, New York

By, /s/Welton K. Wisham, Esq,

_____-

Welton K. Wisham, Esq (WW8674)
The Law Office of Welton K. Wisham
1200 Waters Pl. Suite 105,
Bronx, New York 10561
(718) 924-3557
Attorney for the Plaintiff
Email: wkwisham@optonline.net


Filed
via
NYSD ECF.
Corporation Counsel for the City of New York
100 Church St.

New York, New York 10007
Yini Zhang
Senior Counsel
Special Federal Litigation Division